FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2019 MAR 21 PM 1:28
CLERK 2Burton
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

```
EDWARD STALEY,              *
                            *
     Plaintiff,             *
                            *
v.                          *     CV 318-036
                            *
SHAWN EMMONS; CHERIE PRICE; *
and WESLEY O'NEAL,          *
                            *
     Defendants.            *
```

O R D E R

Presently before the Court is Defendants' motion to dismiss Plaintiff Edward Staley's claims. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

I. BACKGROUND

Plaintiff Edward Staley was incarcerated at Johnson State Prison ("JSP") from May 24, 2016 to March 2, 2017. (Compl., Doc. No. 1, ¶ 1.) While at JSP, Plaintiff was placed in voluntary protective custody and housed in cell J-1-123. (Id.) Plaintiff is sixty-eight years old and suffers from "heat intolerant relapsing remitting Multiple Sclerosis." (Id. ¶ 7.) He has been wheelchair bound since 2007. (Id.) Plaintiff alleges that his assignment to a dorm without air-conditioning exposed him to

substantial risk of harm due to his medical condition. (Id. ¶¶ 9, 11.) He further alleges that during his time at JSP, Defendants rebuffed his many grievances to be relocated due to his medical condition. (Id. ¶ 8.)

On May 23, 2018, Plaintiff, proceeding pro se, filed the instant lawsuit against three JSP officials. He first couches his complaint in terms of deliberate indifference to his serious medical needs under 42 U.S.C. § 1983. While a § 1983 deliberate indifference claim arises out of the Eighth Amendment's protection against cruel and unusual punishment, Plaintiff also mentions that his First, Fourth, Fifth and Fourteenth (substantive and procedural due process) rights have been violated. (Id. ¶ 5.) Plaintiff also alleges that Defendants have violated the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq. (Id.) Plaintiff seeks compensatory damages against Defendants in their individual capacities for his pain and suffering, and he seeks injunctive relief against Defendants, i.e., an order "to provide Plaintiff Staley the medical consideration he requires." (Id. ¶ 15, Prayer for Relief (1) & (2).)

On December 4, 2018, Defendants filed a motion to dismiss, claiming that Plaintiff has failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). Defendants also argue that Plaintiff's claims under the First, Fourth, Fifth and Fourteenth Amendments, as well as the alleged violation of the Rehabilitation Act and RLUIPA should be dismissed because Plaintiff has failed to allege any facts to support these claims. Finally, Defendants argue that Plaintiff is not entitled to injunctive relief because he is no longer housed at JSP.

On December 17, 2018, Plaintiff, through counsel, responded to the motion to dismiss and failed to oppose Defendants' motion with respect to the First, Fourth, Fifth and Fourteenth Amendment claims, the claims under the Rehabilitation Act and RLUPIA, and the claim for injunctive relief. Those claims, therefore, are subject to dismissal for failure to state a claim upon which relief can be granted, Federal Rule of Civil Procedure 12(b)(6). Plaintiff, however, maintains that he has properly exhausted his administrative remedies respecting his ADA and § 1983 deliberate indifference claims, and therefore he opposes dismissal.

## II. LEGAL STANDARDS

The PLRA provides that a prisoner may not bring an action with respect to prison conditions under § 1983 or any other Federal law until he has exhausted available administrative remedies. 42 U.S.C. § 1997e(a). The PLRA requires "proper exhaustion," meaning that a prisoner must "us[e] all steps" in the administrative process and must comply with any administrative "deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90, 93 (2006). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005). The Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter v. Nussle, 534 U.S. 516, 524 (2002). Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

In addressing the exhaustion issue on a motion to dismiss, the Eleventh Circuit has outlined a two-step approach. The Court first must look to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to

4

exhaust administrative remedies, the case will be dismissed. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (cited source omitted). If the complaint is not subject to dismissal at the first step, then the Court must make specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that the plaintiff has failed to exhaust administrative remedies. Id. Because exhaustion "is treated as a matter of abatement, and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record. Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008) (citations omitted).

### III. LEGAL ANALYSIS

In his complaint, Plaintiff alleges that he filed grievances related to his heat-intolerant condition. (Compl. ¶ 6.) He further alleges that he has exhausted his administrative remedies. (Id. ¶ 5.) The parties have agreed that Plaintiff filed two relevant grievances: Grievance No. 222951, filed on July 7, 2016, and Grievance No. 224319, filed on July 13, 2016. Thus, taking these allegations as true, Plaintiff has satisfied the first step of the Turner analysis.

The Court will now turn to the second step of determining whether Defendants have shown that Plaintiff failed to exhaust his administrative remedies with these two grievances.

The Standard Operating Procedure governing prisoner grievances at JSP provides that a prisoner "may file a grievance about any condition, policy, procedure, or action or lack thereof that affects the offender personally." (Decl. of Lakisha Franklin, Doc. No. 17-2, Ex. 1, § VI.B.1 (GDOC's SOP IIB05-0001 (effective date July 20, 2015)) (hereinafter "Grievance SOP").) The Grievance SOP outlines the grievance procedure, including the appeal process, and the applicable timelines that an inmate must follow to properly file a grievance.[1] (See generally Franklin Decl. and the Grievance SOP.) The Grievance SOP, however, lists certain matters as "non-grievable." Pertinent to this case, the non-grievable matters include 1) transfers of offenders between institutions; and 2) changes to housing assignments, program assignments, or work assignments, unless there is an alleged threat to the offender's health or safety. (Id. § VI.B.2(f) & (h).)

On July 7, 2016, Plaintiff filed Grievance No. 222951, which complained that JSP was not complying with his medical profile of "heat intolerance" because he was not housed with air conditioning.

---

[1] In this case, Defendants do not contend that Plaintiff failed to follow the outlined procedure or missed an applicable deadline.

(Defs.' Resp. to Court Order, Doc. No. 23, Ex. A, at 1.) Plaintiff complained that JSP's non-compliance was a threat to his health and safety. (Id.) Plaintiff noted that JSP did not have the "physical capability to comply" because he must also be in protective custody and the protective custody facilities at JSP were not air conditioned. (Id.) Thus, Plaintiff essentially sought a transfer from JSP. (Id.)

The Grievance Counselor screened Plaintiff's grievance and recommended dismissal because "routing housing assignments are non-grievable." (Id. at 5.) Likewise, the Warden rejected Plaintiff's grievance because "housing assignments and transfers are not grievable issues and should be addressed through the appeal process." (Id. at 6.) Plaintiff's appeal of this decision was upheld because "routing housing assignments are non-grievable." (Id. at 9.)

On July 13, 2016, Plaintiff filed a similar grievance, stating that housing him without air conditioning was causing physical, mental, [and] emotional torture." (Franklin Decl., Ex. 5, at 1.) Plaintiff mentioned his "'heat intolerant' multiple sclerosis." (Id.) Because this was a perceived threat to his health and safety, Plaintiff cites to the Grievance SOP § VI.B.2(h), which provides a health and safety exception to the typically non-

7

grievable housing issue. (Id.) Ultimately, however, Plaintiff sought a transfer out of JSP. (Id.)

The Grievance Coordinator again recommended that the grievance be rejected because "routing housing assignments are non-grievable" under the Grievance SOP. (Id. at 3.) The Grievance Coordinator also stated that the issue was addressed in response to Plaintiff's July 7, 2016 grievance. (Id.) Again, the Warden rejected the grievance. (Id. at 4.) On appeal, the Central Office for the Georgia Department of Corrections denied the grievance because Plaintiff failed to follow proper procedure in that "housing assignments are not addressed through the grievance process [but] should be address[ed] through the appeal process." (Id. at 6.)

In its motion to dismiss, Defendants argue that Plaintiff followed the wrong procedure. They assert that inmates requesting a change in housing must submit a classification appeal form in accordance with the Classification SOP of the Georgia Department of Corrections. Defendants contend that Plaintiff's failure to "appeal his housing assignment to the Classification Committee" is fatal to his case. (See Franklin Decl. ¶ 26.)

In response, Plaintiff contends that the Grievance SOP was the proper vehicle by which to file his grievance because his housing assignment was detrimental to his health and safety.

8

Plaintiff points out that housing assignment matters are non-grievable "unless there is an alleged threat to the offender's health and safety." (Grievance SOP, § VI.B.2(h).) Defendants' only response thereto was that Plaintiff should have filed a "medical recommendation that his housing assignment be changed."[2] (Decl. of Cherie Price, Doc. No. 21-1, ¶ 7.)

In the Court's estimation, Plaintiff was not requesting a "housing" assignment as characterized by the parties in brief and in prison officials' responses to his grievances. Rather, in recognizing that JSP could not house him in an air-conditioned dorm while providing protective custody, Plaintiff was requesting a prison transfer. The transfer of prisoners between institutions is clearly a non-grievable matter. (Grievance SOP, § VI.B.2(f).) Thus, he did not fail to exhaust administrative remedies with respect to the Grievance SOP because that procedure was inapplicable to his requested relief.

Defendants' reference to the Classification SOP is unavailing. The Classification SOP involves the plan by which the Georgia Department of Corrections "assesses the program needs of offenders, ensures appropriate custody level assignment, and provides for on-going evaluation of offender progress and

---

[2] The Court notes that this requirement is not in the Grievance SOP and ignores the presumably extensive medical file of this Plaintiff.

adjustment." (Franklin Decl., Ex. 2, § I (GDOC's Policy No. 220.03) ("Classification SOP").) Thus, the Classification SOP appears to apply to the classification (housing assignments, program assignments, and work assignments) of offenders within a facility. The Court could not find an administrative process related to a facility transfer in the Classification SOP. Moreover, the "Classification Appeal Form" referenced by Defendants in brief does not include a request for facility transfer. (See id. at 1.)

The Court is troubled by the lack of direction given to Plaintiff in the grievance process. While Plaintiff was told at every level that his grievance was "non-grievable," Defendant only mentioned once per grievance that the matter "should be addressed through the appeal process," which is scant direction for an offender with an alleged serious health concern. There was no reference to the Classification SOP during the grievance process.

The PLRA mandates that an inmate exhaust "such administrative remedies as are available" prior to filing suit. 42 U.S.C. § 1997e(a). Stated another way by the United States Supreme Court, an inmate need not exhaust *unavailable* administrative remedies. Ross v. Blake, --- U.S. ---, 136 S. Ct. 1850, 1858 (2016). The Ross Court went on to describe the plain meaning behind the word available as those grievance procedures that are "'capable of use'

to obtain 'some relief for the action complained of.'" Id. at 1859. Mindful of the fact that the burden is on Defendants, the Court concludes that Plaintiff did not fail to exhaust administrative remedies because neither the Grievance SOP nor the Classification SOP could provide the relief sought by Plaintiff, i.e., a prison transfer due to health conditions. If there is an administrative procedure that must be exhausted prior to filing a complaint arising out of a failure to transfer an inmate, Defendants have not carried their burden to establish the procedure and that Plaintiff failed to follow it. Simply put, there is no exhaustion issue here.

## IV. CONCLUSION

Upon the foregoing, Defendants' motion to dismiss (doc. no. 17) is **GRANTED IN PART** and **DENIED IN PART**. More specifically, the Court grants the dismissal of Plaintiff's claims arising out of the First, Fourth, Fifth and Fourteenth Amendments, his claims under the Rehabilitation Act and RLUPIA, and his claim for injunctive relief under Federal Rule of Civil Procedure 12(b)(6). The ADA and § 1983 deliberate indifference claims will not be dismissed because Defendants did not show that Plaintiff failed to exhaust administrative remedies.

The stay of this case is hereby **VACATED**. In accordance with the Order of December 21, 2018, the parties shall confer and submit a Rule 26(f) Report, with proposed case deadlines, within seven days of the entry of this Order.

**ORDER ENTERED** at Augusta, Georgia, this 21st day of March, 2019.

_____
UNITED STATES DISTRICT JUDGE