| | | |
|---|---|---|
| EDWARD STALEY, | * | |
| Plaintiff, | * | |
| v. | * | CV 318-036 |
| SHAWN EMMONS; CHERIE PRICE; and WESLEY O'NEAL, | * | |
| Defendants. | * | |

**O R D E R**

Presently before the Court is Defendants' motion for summary judgment as to Plaintiff Edward Staley's remaining claims. Upon review of the evidence of record, the relevant law, and the parties' respective briefs, Defendants' motion for summary judgment is **GRANTED** for the following reasons.

## I. BACKGROUND

Plaintiff became an inmate in the Georgia State prison system in 2015.[1] (Defs.' St. of Material Facts ("DSMF"), Doc. No. 30-2, ¶ 4.) He was initially housed at Coastal State Prison ("Coastal")

---

[1] Plaintiff's term of probation on a child molestation charge, for which he served 12.5 years from 2002 to January 16, 2015, had been revoked. (Pl.'s Dep., Doc. No. 35-1, at 26-29.) Previously, Plaintiff had been convicted of child molestation of his adopted children in 1984 and had been incarcerated in the Georgia prison system at various times since that time. (Id. at 18-23.)

until April 20, 2016. (Id. ¶ 5.) Plaintiff was then transferred for a short time to Augusta State Medical Prison. (Id. ¶ 6.) On May 24, 2016, rather than returning to Coastal, which was Plaintiff's preference, he was transferred to Johnson State Prison ("JSP"). (Id. ¶¶ 7 & 8.) Plaintiff's housing experience at JSP gives rise to the events resulting in this lawsuit.

Upon arriving at JSP, Plaintiff was assigned to a room in Dorm D-3. Dorm D-3 was one of four separate and distinct dorms in Building D. (Id. ¶¶ 11 & 12.) Building D's dorms were designed to accommodate inmates who were wheelchair bound or had other disabilities (id. ¶ 21), and Plaintiff is wheelchair bound (Pl.'s Dep. at 96.).

The D-3 dorm to which Plaintiff was initially assigned was air conditioned. Plaintiff spent one night there, but the next morning he asked to be placed in protective custody.[2] (DSMF, ¶¶ 23-25.) Plaintiff was immediately assigned a room in Dorm J-1, which was an administrative segregation dorm. (Id. ¶ 26.) Building J, however, was not air conditioned; rather, it had ventilation fans on its roof that pulled warm air out of the building. (Decl. of Wesley O'Neal, Doc. No. 30-6, ¶ 7.) Also, the cells in Building J had vents that allowed for air-circulation, the dorm had a thermometer a dorm officer routinely monitored, and

---

[2] Because of his convictions for child molestation, Plaintiff believed that other inmates would harm him.

2

during the warm months, officers provided extra ice calls and additional showers to keep inmates comfortable. (Id. ¶¶ 7-9.)

The lack of air conditioning was allegedly a problem for Plaintiff because he has heat-intolerant Multiple Sclerosis. He testified that during his assignment to Dorm J-1, he experienced the following symptoms or exacerbations of MS symptoms when it was hot in the dorm: degradation of his cognitive abilities, short-term memory loss, fatigue, loss of balance, severe left eye pain, and cramps in his arms, legs, hands and feet. (Pl. Dep. at 94-100.)

Plaintiff had opportunities to speak with Defendants herein to voice any concerns. Defendant Wesley O'Neal, the Unit Manager for Dorm J-1, performed daily rounds Monday through Friday and spoke to every inmate. (O'Neal Decl. ¶ 5.) Defendant Cherie Price, Deputy Warden of Care and Treatment at JSP, also performed daily rounds. (Decl. of Cherie Price, Doc. No. 30-5, ¶ 10.) And, Warden Shawn Emmons walked through JSP's dorms to check on inmates during the week. (Decl. of Shawn Emmons, Doc. No. 30-4, ¶ 22.) Each of these Defendants avers that Plaintiff requested to be transferred back to Coastal. (Emmons Decl. ¶¶ 19 & 23; Price Decl. ¶¶ 11 & 13; O'Neal Decl. ¶ 20.) However, Plaintiff never informed Defendants that the heat was causing him any pain or medical problems. (Emmons Decl. ¶ 29; Price Decl. ¶ 18; O'Neal Decl. ¶

11.) Moreover, Defendants never saw Plaintiff in any medical distress or discomfort. (Emmons ¶ 30; Price Decl. ¶ 17; O'Neal Decl. ¶ 15.)

In addition to Defendants and other correctional officers, a member of the medical staff performed daily rounds to check on inmates. (Pl.'s Dep. at 108; Emmons Decl. ¶ 22; see also O'Neal Decl. ¶ 6 ("Moreover, the correctional officer walked the dorm and checked on inmates at least every thirty (30) minutes.").) And, inmates could request medical care or treatment by submitting a sick call slip in a box that was brought around to the inmates.[3] (Emmons Decl. ¶¶ 31-32.) At deposition, Plaintiff claims that he requested numerous times for medical relief from the heat, but his requests were largely ignored.[4] (Pl.'s Dep. at 100, 104-05, 109.)

On August 11, 2016, Plaintiff was seen by Pamela Lindsey, a Nurse Practitioner at JSP. (Decl. of Pamela Lindsey, Doc. No. 32-1, ¶ 6.) During this visit, Plaintiff complained that he had

---

[3] Warden Emmons explains that correctional officers were not allowed to see the sick call slips to protect an inmate's medical privacy. (Emmons Decl. ¶ 32.)

[4] Of note, the record does not show that Plaintiff filed any grievance for JSP's failure to respond to his sick call slips. Rather, the grievances of record complain that JSP ignored his medical profile of "heat intolerance" in choosing not to house him with air conditioning. (See generally Order of March 21, 2019, Doc. No. 24 (detailing Plaintiff's grievance history).) Any alleged failure to respond to medical requests outside of his requests to be housed with air conditioning is not at issue in this case.

4

issues related to heat-intolerant MS. (Id. ¶ 7.) Upon physical examination, however, Ms. Lindsey found Plaintiff's MS to be stable. (Id. ¶ 8.) She did not recommend that Plaintiff be housed in an air-conditioned cell. (Id. ¶ 10.) According to Plaintiff, this examination was interrupted by another nurse who directed that Plaintiff be returned to his dorm. (Pl. Dep. at 113-14.) Be that as it may, Plaintiff's medical records at JSP do not indicate that he was ever seen or treated by the medical department for exacerbation of his MS. (Lindsey Decl. ¶ 12.) Importantly, Plaintiff's medical records at the time of his incarceration at JSP in 2016 do not reflect a medical recommendation that he be housed with air conditioning.[5] (Price Decl. ¶ 15; Emmons Decl. ¶ 36.)

Finally, Plaintiff's counselor, Ladeisha Norris, checked in on him on a weekly basis. (Decl. of Ladeisha Norris, Doc. No. 32-2, ¶ 7.) Ms. Norris provides the contemporaneous notes that she took of their weekly contact. Upon their first meeting on June 1, 2016, Plaintiff stated that he wanted to transfer out of JSP because it was too hot, but he did not disclose that he was suffering any heat-related medical ailment. (Id. ¶¶ 9-10.)

---

[5] Conversely, Plaintiff claims he had a heat-intolerant profile since 2002. (Pl.'s Dep. at 53.) However, the only evidence that Plaintiff has presented demonstrating that he had a heat-intolerant profile is dated after he left JSP in March 2017. (See Pl.'s Br. in Opp'n to Mot. for Summ. J., Ex. 1, Doc. No. 35-2, at 50-53.)

5

Plaintiff similarly reported that he had no issues with his dorm on June 15 and 22, 2016; and July 7, 14, and 27, 2016. (Id. ¶ 12.) Though at times they discussed various grievances Plaintiff had filed, Plaintiff never complained of being in any pain or discomfort as a result of the temperature in Dorm J-1; Ms. Norris also never saw him in any obvious pain or discomfort. (Id. ¶¶ 11, 12 & 14.)

Plaintiff remained in Dorm J-1 until he was transferred back to Coastal on March 2, 2017. Plaintiff admits that during his stay at JSP, he was never hospitalized at an outside facility nor taken to the medical department at JSP on an emergency basis. (Pl.'s Dep. at 135-36.)

Plaintiff filed this lawsuit against Defendants Emmons, O'Neal and Price on May 23, 2018. The only claims remaining in the case are: 1) a claim for deliberate indifference to Plaintiff's serious medical needs under 42 U.S.C. § 1983, and 2) a claim for violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (See Order of March 21, 2019.)

On October 4, 2019, Defendants filed the instant motion for summary judgment. The Clerk gave Plaintiff notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. No. 31.) Therefore, the notice

requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. Plaintiff filed a brief in opposition to the motion for summary judgment, and Defendants have filed a reply brief. The motion is ripe for consideration.

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of the summary judgment rule is to dispose of unsupported claims or defenses, which, as a matter of law, raise no genuine issues of material fact suitable for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–24 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . [only] if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" for a jury to return a verdict for the nonmoving party. <u>Id.</u> at 252; accord <u>Gilliard v. Ga. Dep't of Corrs.</u>, 500 F. App'x 860, 863 (11th Cir. 2012) (per curiam). Additionally, the party opposing summary judgment "may

7

not rest upon the mere allegations or denials in its pleadings. Rather, [his] responses . . . must set forth specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990). As required, this Court will view the record evidence "in the light most favorable to the [nonmovant]," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and will "draw all justifiable inferences in [Plaintiff's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal quotation marks omitted).

### III. LEGAL ANALYSIS

#### A. Deliberate Indifference

Plaintiff's Eighth Amendment claim of deliberate indifference to a serious medical need may be brought pursuant to 42 U.S.C. § 1983. See Magwood v. Secretary, Fla. Dep't of Corrs., 562 F. App'x 841, 844 (11th Cir. 2016) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). In particular, Plaintiff claims that Defendants knew about his heat-intolerant medical condition but nevertheless placed him in a cell without air conditioning. Thus, Defendants were deliberately indifferent to his serious medical condition.

To prevail on a deliberate indifference claim, a plaintiff must show: "(1) a serious medical need; (2) the defendants'

8

deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." See, e.g., Mann v. Taser Int'l, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (cited source omitted).

With respect to the first prong, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 1307 (quoted source omitted). Here, it is undisputed that Plaintiff has MS, a serious medical condition. Yet, Plaintiff does not assert a claim of deliberate indifference to his MS; rather, his claim is deliberate indifference to excessive heat that exacerbates the symptoms of his MS. In this regard, Plaintiff has testified that he has "heat-intolerant" MS, that his condition worsened in the heat of Dorm J-1, and that he had a heat-intolerant profile in his prison record since 2007. These statements are belied by the evidence. First, the only medical profiles in the record mentioning heat intolerance are dated after Plaintiff was transferred out of JSP. Thus, Plaintiff has not shown that a physician or any other medical personnel had mandated air conditioning before or while he was at JSP. Moreover, the seriousness of his heat intolerance was not so obvious to a layperson that Defendants should have known to provide air-

9

conditioned housing. Rather, the evidence shows that Plaintiff never complained to Defendants or any other prison official about the deleterious effect the heat was having on his MS, he was never seen by the medical staff at JSP on an emergent basis, and Defendants never saw Plaintiff in pain or discomfort because of the heat. In fact, the only time Plaintiff was seen by a JSP medical professional on August 11, 2016, his MS was considered stable. Based upon this evidence, no reasonable jury could find that Plaintiff's need to be in air conditioning was a serious medical need.

In order to satisfy the second prong, a plaintiff must show that the prison official subjectively knew of the risk of serious harm to the plaintiff and disregarded that risk with conduct that goes beyond negligence. See, e.g., Dang v. Sheriff, Seminole Cnty. Fla., 871 F.3d 1272, 1280 (11th Cir. 2017); Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016). "Subjective knowledge of the risk requires that the defendant be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Nam Dang, 871 F.3d at 1280 (quoted source omitted). In this case, there is no evidence of record – other than Plaintiff's conclusory allegations – that any Defendant was aware of his heat intolerance.[6] Nor is

---

[6] In his opposition brief, Plaintiff refers to "scribe notes" detailing his medical issues. (See Pl.'s Br. in Opp'n, Doc. No.

there any evidence that any Defendant ignored Plaintiff's medical needs caused by his heat intolerance. As stated previously, Plaintiff did not have a profile requiring air conditioning while at JSP, he was never treated by JSP medical personnel for problems caused by excessive heat, and most importantly, he never complained to any Defendant that he was suffering or required medical attention for exacerbations to his MS caused by the heat.[7] Rather, when Plaintiff spoke to Defendants, he only reiterated his desire to be transferred out of JSP so that he could have air conditioning and feel safe. Thus, Plaintiff has failed to provide evidence to support a finding that any Defendant had the requisite subjective knowledge or acted with the requisite level of culpability to establish deliberate indifference.

Finally, Plaintiff cannot satisfy the third prong - causation. While Plaintiff lists the symptoms he experienced in Dorm J-1 at deposition, he presents no medical evidence that heat exposure caused these problems in 2016. He presents no evidence that he actually suffered from or was treated for an injury caused

---

35, at 8.) However, Plaintiff has only presented medical records that post-date his stay at JSP. (Id., Ex. 1, at 50-53.)

[7] To the extent that Plaintiff claims he often complained to Defendants about the lack of air conditioning and its effect on his MS, there is no medical evidence upon which a reasonable juror could conclude that Defendants should have known Plaintiff was at substantial risk of serious harm versus merely uncomfortable from the heat.

11

by heat exposure while at JSP. In fact, the only medical professional to treat Plaintiff at JSP during the summer of 2016 found his MS to be stable. Thus, Plaintiff cannot establish that Defendants' indifference caused him injury.

In conclusion, the Court concludes that Plaintiff cannot demonstrate a case of deliberate indifference as a matter of law, and Defendants are therefore entitled to summary judgment.

## B. ADA Claim

A state prisoner may state a claim under Title II of the ADA. Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1081 (11th Cir. 2007). In order to establish a prima facie case under the ADA, a plaintiff must show: (1) he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the a public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of his disability. Id. at 1083.

The Court need not tarry long here. First, as mentioned above, Plaintiff presents no evidence other than his say so that any Defendant knew about his disability, i.e., **heat-intolerant** MS; accordingly, Defendants were not in the position to discriminate against him because of it. Second, assuming any Defendant knew of Plaintiff's problems with heat, there is no evidence upon which a

12

reasonable juror could conclude that he was not provided air conditioning *because of* or *by reason of* his disability. Rather, the evidence shows that Plaintiff was not provided with air conditioning because he voiced safety concerns about being lodged in Building D. Whether his safety concerns were valid is not the issue. The problem is that the evidence only shows that Plaintiff was moved out of the air conditioning upon of his request, not because of his disability. Simply put, Plaintiff has failed to state a viable claim under the ADA.

## IV. CONCLUSION

Upon the foregoing, Defendants' motion for summary judgment (doc. no. 30) is **GRANTED**. The Clerk shall **CLOSE** the case and **ENTER JUDGMENT** in favor of Defendants.

**ORDER ENTERED** at Augusta, Georgia, this 18th day of February, 2020.

_____
UNITED STATES DISTRICT JUDGE